IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THEODORE LOREN CLARK,

        Petitioner,                        No. CIV S-08-1433 CHS P

    vs.

MICHAEL EVANS, et al.,

        Respondents.        <u>ORDER DISMISSING PETITION</u>

_____/

## I.  INTRODUCTION

        Petitioner, a state prisoner, proceeds pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.  The parties have consented to jurisdiction by a United States Magistrate Judge.

## II.  BACKGROUND

        Petitioner was previously married to the mother of C.U. and later, to the mother of D.S.  When petitioner was married to D.S.'s mother, they lived together for a period of time as a family unit with C.U., D.S., and two other children.  Between June 24, 1996 and June 23, 1998, when C.U. was seven to eight years old, petitioner touched her vagina with his hand and/or penis on more than one occasion, and also orally copulated her.  Between June 11, 1996 and June 10, 1999, petitioner sodomized or attempted to sodomize D.S., who was six to eight years old.

1

1   Contacted by law enforcement in 2005, petitioner expressed remorse and admitted the crimes.

2          On July 11, 2006, petitioner pleaded no contest to seven counts of lewd conduct

3   with a child (Cal. Penal Code § 288(a)) involving two different victims, and admitted an

4   allegation of substantial sexual conduct (Cal. Penal Code § 1203.066(a)(8)) in exchange for a

5   stipulated term of twenty years imprisonment.  Petitioner was sentenced accordingly on

6   September 22, 2006.  During this time, petitioner was represented by counsel, Mr. Keene.

7          Petitioner's appellate attorney, Ms. Shors, filed a brief pursuant to *People v.*

8   *Wende*, 25 Cal. 3d 436 (1979), declining to raise any specific claims on appeal.  Accordingly, the

9   California Court of Appeal, Third District, affirmed the judgment and sentence.  Petitioner

10   attempted to file a pro se petition for rehearing.  The petition was denied because he was

11   represented by counsel.

12          Petitioner filed a pro se habeas corpus petition in the Sacramento County Superior

13   Court, alleging that the statute of limitations for his offenses had expired, that pre-indictment

14   delay deprived him of rights guaranteed by the due process clause, and that Attorney Keene and

15   Attorney Shors both rendered ineffective assistance of counsel.  The superior court denied the

16   petition in a written decision dated August 17, 2007.  A subsequent petition to the California

17   Supreme Court, was likewise denied, but without written explanation.

## III.  CLAIMS

19          The pending federal petition presents three grounds for relief.  For purposes of

20   this opinion, petitioner's claims will be addressed as follows:

21          (A)  Petitioner contends that the statute of limitations expired before prosecution

22   commenced.  Petitioner claims that plea counsel, Mr. Keene, rendered ineffective assistance in

23   failing to raise this issue prior to entry of plea, and appellate counsel, Ms. Shors, rendered

24   ineffective assistance in failing to raise the issue on appeal. (*See* Petition, grounds one and three.)

25          (B) Petitioner contends that the delay between the time law enforcement was first

26   contacted and the time prosecution was commenced violated his right to due process.  Petitioner

1   additionally claims that plea counsel, Mr. Keene, erred in failing to preserve this issue for appeal

2   or by incorrectly advising petitioner that this issue would be preserved for appeal. (*See* petition,

3   ground two.)

## IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

5   An application for writ of habeas corpus by a person in custody under judgment of

6   a state court can be granted only for violations of the Constitution or laws of the United States.

7   28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

8   *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

9   This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

10  the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

11  U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under

12  AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

13  state court proceedings unless the state court's adjudication of the claim:

14          (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as

15          determined by the Supreme Court of the United States; or

16          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the

17          State court proceeding.

18  28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

19  *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

20  This court looks to the last reasoned state court decision in determining whether the law applied

21  to a particular claim by the state courts was contrary to the law set forth in the cases of the United

22  States Supreme Court or whether an unreasonable application of such law has occurred.  *Avila v.*

23  *Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003).

## V.  DISCUSSION

25      A.      Ineffective Assistance of Counsel based on the Statute of Limitations

26      Petitioner contends that the statute of limitations expired before prosecution

1  commenced, and, consequently, that the Ex Post Facto Clause prohibited his subsequent

2  convictions.  In the pending petition, petitioner does not appear to bring a claim under the Ex

3  Post Facto Clause; rather, he claims that both plea counsel and appellate counsel rendered

4  ineffective assistance in failing to raise this issue prior to entry of the plea, and on appeal,

5  respectively.

6          The Sixth Amendment guarantees a criminal defendant the effective assistance of

7  counsel.  A showing of ineffective assistance has two components.  First, a petitioner must show

8  that, considering all the circumstances, counsel's performance fell below an objective standard of

9  reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  There is a strong

10  presumption "that counsel's performance falls within the 'wide range of professional

11  assistance,'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (*quoting Strickland*, 466 U.S. at

12  689), and that counsel "exercised acceptable professional judgment in all significant decisions

13  made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (*citing Strickland*, 466 U.S. at 689).

14          The second factor required for a showing of ineffective assistance of counsel is

15  actual prejudice caused by the deficient performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice

16  is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

17  result of the proceeding would have been different." *Id*. at 694.  A reasonable probability is "a

18  probability sufficient to undermine confidence in the outcome." *Id*.; *see also Williams*, 529 U.S.

19  at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).

20          The two part *Strickland* test applies to challenges to guilty pleas based on

21  ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) ("[A] defendant who

22  pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character

23  of the guilty plea by showing that the advice he received from counsel was [ineffective].")

24  (internal quotations omitted).  In this context, a petitioner is denied effective assistance of

25  counsel when counsel's plea advice resulted in an involuntary plea. *See Tollet v. Henderson*, 411

26  U.S. at 267-68.

1    The *Strickland* standards apply equally to appellate counsel.  *Smith v. Murray*, 477

2  U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).  Nevertheless,

3  an indigent defendant "does not have a constitutional right to compel appointed counsel to press

4  nonfrivolous points requested by the client, if counsel, as a matter of professional judgment,

5  decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  There is no

6  obligation to raise meritless or weak arguments on a client's behalf.  *Miller*, 882 F.2d at 1434;

7  *see also Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as

8  prejudice).

9    As to petitioner's claims that both plea counsel and appellate counsel failed to

10  raise a statute of limitations issue at the appropriate time, the Sacramento County Superior Court

11  held, in the last reasoned stated court decision:

12    A statute may extend the statute of limitations on a crime whose
      statute of limitations has not yet expired; this does not violate the
13    prohibition against *ex post facto* laws. (People v. Vasquez (2004)
      118 Cal.App.4th 501.)  Effective January 1, 2001, the statute of
14    limitations for offenses described in Penal Code section 290(a)
      (2)(A), where the 6-year limitations period had not expired as of
15    January 1, 2001, was extended to 10 years from the commission of
      the offense.  (Former Pen. Code, § 803(h)(1).)  In 2001, Penal
16    Code section 290(a)(2)(A) included violations of Penal Code
      section 288.  To show constitutionally inadequate ineffective
17    assistance of counsel, a defendant must show that counsel's
      representation fell below an objective standard and that counsels'
18    failure was prejudicial to the defendant.  (In re Alvarnaz (1992) 2
      Cal.4th 924, 937.)

19
      Petitioner was convicted of multiple counts of lewd conduct with a
20    minor.  Petitioner claims that the face of the complaint/
      information showed that the statue of limitations had expired by
21    the time the prosecution commenced.  Petitioner also claims that
      trial and appellate counsel were ineffective for failing to raise the
22    issue either at trial or on appeal.  First, he claims that the
      prosecution commenced on January 31, 2006, when the
23    information was filed.  However, the file in the underlying case
      shows that an arrest warrant was issued on September 14, 2005,
24    commencing the prosecution.  (See Pen. Code, § 804(d).)  Second,
      Petitioner was charged with violations of Penal Code section
25    288(a), for acts occurring between June 11, 1996 and June 10,
      1999 for Count 7.  The statute of limitations for those violations
26    was originally six years.  Therefore, the limitations period would

1    have ended in 2002.  Since the limitations period had not expired
2    before January 1, 2001, the period was extended in 2001 to 10
     years from the commission of the offense.  Therefore, the
3    limitations period expired in June 2006 as to all counts.  Since the
     prosecution commenced in September 2005, the statute of
4    limitations had not expired.  Since the limitations period had not
     expired, neither trial counsel nor appellate counsel was ineffective
5    for failing to raise the issue.

6    *In re Clark*, No. 07F07340, slip op. at 1-2 (Sup. Ct. of CA, August 17, 2007).

7            The state court's rejection of petitioner's allegations of ineffective assistance of

8    counsel based on the statute of limitations is neither contrary to, nor an unreasonable application

9    of clearly established Supreme Court precedent.  Rather, the decision is a reasonable application

10   of the *Strickland* standard, as petitioner's fails to demonstrate deficient performance on the part

11   of either attorney.

12           Petitioner was charged in Counts 1 through 6 of the information with violating

13   California Penal Code section 288(a) between June 1996 and June 1999; Count 7 charged him

14   with violating the same section between June 1996 and June 1999.  (Clerk's Transcript

15   (hereinafter "CT") at 41.1-41.5.)  In 1996, a six-year statute of limitations period applied to

16   violations of section 288(a).  *See* former Cal. Penal Code §800 (West 1996); *see also In re White*,

17   163 Cal. App.4th 1576, 1579-80 (2008).  Thus, as the state court found, the six-year statute of

18   limitations for petitioner's underlying offenses was set to expire in June 2002 by the terms of

19   section 800.

20           Effective January 1, 2001, however, a chaptered statute added a new subdivision

21   (h)(1) to former section 803, extending from six years to 10 years the statute of limitations

22   applicable to the crimes of which petitioner was convicted:

23           Notwithstanding the limitation of time described in Section 800,
             the limitations period for commencing prosecution for a felony
24           offense described in subparagraph (A) of paragraph (2) of
             subdivision (a) of [former] Section 290, where the limitations
25           period set forth in Section 800 has not expired as of January 1,
             2001, or the offense is committed on or after January 1, 2001, shall
26           be 10 years from the commission of the offense..."

6

1   *See* former Cal. Penal Code §803(h)(1) (West 2001);  *In re White*, 163 Cal. App. 4th at 1580.

2         In *Stogner v. California*, 539 U.S. 607, 616-17 (2003), the United States Supreme

3   Court struck down this new provision in former California Penal Code section 803(g), as a

4   violation of the Ex Post Facto Clause, to the extent that it revived previously time-barred

5   prosecutions for sexual offenses.  The Court nevertheless observed that its holding did not affect

6   extensions of *unexpired* statutes of limitations, which have been consistently upheld against ex

7   post facto challenges.  *Id*. at 618.  Importantly, in 2001, at the time of the statutory change, the

8   previously applicable six year statute of limitations period had not expired with respect to

9   petitioner's offenses.  Accordingly, the extension in section 803, as applied to petitioner, did not

10  violate the Ex Post Facto Clause.  Following the extension, the prosecution had until June 2006

11  to commence prosecution.

12        On January 1, 2005, section 803(h)(1) was repealed and its substance

13  simultaneously reenacted as California Penal Code section 801.1.  Under the new section 801.1,

14  just like former section 803(h)(1), a 10 year statute of limitations applied for violations of section

15  288(a).  This simultaneous repeal and reenactment of the 10 year limitations period merely

16  "changed the statutory home of the 10-year statute of limitations, without substantive textual

17  change, to a new statute."  *In re White*, 163 Cal. App. 4th 1576, 1580-81 (2008) (internal

18  citations omitted).  Because section 801.1 was enacted in substantially the same terms as the

19  simultaneously repealed former section 803(g)(1), the unchanged provisions are construed "as

20  being continuously in force."  *Id*. at 1581-82.  Thus, the ten-year statute of limitations "was

21  continuously in effect" from its initial enactment in former section 803(h)(1) through its

22  relocation to section 801.1.  *See Id*. at 1583.

23        Indeed, the United States Supreme Court has long held that, where a new statute

24  repeals an existing statute, "they both legislate upon the same subject, and in many cases the

25  provisions of the two statutes are similar, and almost identical," and "there has never been a

26  moment of time since the passage of the [existing statute] when these similar provisions have not

1  been in force," "the new act should be construed as a continuation of the old with the

2  modification contained in the new act." *Bear Lake & River Waterworks & Irrigation Co. V.*

3  *Garland*, 164 U.S. 1, 11-12 (1896).  In *Bear Lake*, the Supreme Court explained that "the new

4  [statute] might more properly be said to be substituted in place of the old one, and to continue in

5  force, with modifications, the provisions of the old act, instead of abrogating or annulling them,

6  and re-enacting the same as a new and original act." *Id*. at 12 (citing *Pacific Mail SS Co v.*

7  *Joliffe*, 69 U.S. 450 (1986)).

8      As the state court found, under the new 10 year statute of limitations contained in

9  section 803, the prosecution had until June 2006 to commence prosecution.  Under California

10  law at all times relevant, prosecution is commenced by filing an indictment or information, or

11  obtaining a warrant for arrest, among other possibilities.  Cal. Penal Code § 804(a); *see also*

12  former Cal. Penal Code § 804(a) (West 2001-2006).  Petitioner was charged with the offenses of

13  conviction in a complaint filed September 14, 2005; this complaint was deemed to be an

14  information on January 31, 2006.  (CT at 23, 41.1-41.6, 46.)  Additionally, an arrest warrant was

15  issued on September 14, 2005.  (CT at 1.)  Regardless of whether it was the complaint,

16  information, or arrest warrant that commenced prosecution, no ex post facto violation occurred.

17      Petitioner nevertheless appears to argue that the applicable statute of limitations

18  period for his offenses is still six years.  In support of this proposition, petitioner cites subsection

19  (a) of section 803: "Except as provided in this section, a limitation of time prescribed in this

20  chapter is not tolled or extended for any reason."  Cal. Penal Code § 803(a).  Petitioner states that

21  "[section] 801.1 clearly is not within [section] 803."  Thus, petitioner appears to argue that

22  section 801.1 improperly extended the statute of limitations formerly contained in section 803.

23  Petitioner misunderstands the applicable current and former statutes and his argument is without

24  merit.  The ten-year statute of limitations was initially enacted *within* former section 803(h)(1),

25  effective January 1, 2001 (changing the statute of limitations from six to 10 years).  As discussed,

26  on January 1, 2005, section 803(h)(1) was repealed and its ten-year statute of limitations

1    simultaneously reenacted as California Penal Code section 801.1.  From that point on, the

2    relevant statute of limitations for petitioner's offenses was always contained in section 801.1, and

3    not in section 803.  At no time was the statute of limitations for petitioner's offenses extended or

4    tolled in violation of section 803(a).

5              In sum, the extension of the unexpired statute of limitations applicable to

6    petitioner's offenses from six years to 10 years was constitutionally permissible, and his criminal

7    prosecution was initiated before that 10 year period expired.  Accordingly, petitioner fails to

8    demonstrate deficient performance on the part of either attorney.  Neither plea counsel nor

9    appellate counsel rendered ineffective assistance in failing to raise a statute of limitations issue.

10             B.       Pre-indictment Delay

11             Petitioner also contends that his due process rights were violated because of

12   unexplained preaccusation delay, also known as pre-indictment delay, between the time that an

13   initial report was made to law enforcement in 2001, and the subsequent filing of the criminal

14   complaint in 2005.  In the alternative, petitioner contends that plea counsel rendered ineffective

15   assistance by failing to preserve the issue for appeal or by inaccurately advising petitioner that

16   the issue would be preserved for appeal.  In this regard, petitioner contends he "specifically told

17   counsel he would accept the [plea] offer – to avoid a potential life sentence – but only if the

18   preaccusation delay issue could be raised on appeal."

19             Although petitioner presented this claim on state habeas corpus, it was not

20   specifically resolved on the merits in a reasoned decision.  Accordingly, the claim will be

21   reviewed de novo.  *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th cir. 2002) ("[W]hen it is clear

22   that a state court has not reached the merits of a properly raised issue, we must review it de

23   novo.")

24             As an initial matter, when he entered his plea of no contest, petitioner waived his

25   right to assert in the future a claim that pre-indictment delay violated his right to due process.

26   *See generally Gomez v. Berge*, 434 F.3d 940, 943 (7th Cir. 2006) (holding that most antecedent

1  constitutional claims are waived by the entry of a no contest plea, but that a double jeopardy

2  claim is not waived), *cert denied*, 547 U.S. 1168 (2006).  A plea of no contest "is an admission

3  of guilt for the purposes of the case."  *Hudson v. Unites States*, 272 U.S. 451, 455 (1926).  When

4  a criminal defendant has solemnly admitted in open court that he is guilty of a charged offense he

5  may not thereafter raise independent claims relating to deprivation of constitutional rights that

6  occurred prior to entry of the plea, but may only attack the voluntary and intelligent character of

7  the plea.  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also Hill*, 474 U.S. at 56-57 ("[A]

8  defendant who pleads guilty upon the advice of counsel may only attack the voluntary and

9  intelligent character of the guilty plea by showing that the advice he received from counsel was

10 [ineffective].") (internal quotations omitted).

11        Accordingly, petitioner's entry of a no contest plea bars a subsequent attack on his

12 conviction based on allegations of pre-indictment delay.  Petitioner is still entitled to attack the

13 voluntary and intelligent nature of his plea by asserting that plea counsel rendered ineffective

14 assistance in this regard, however, this claim fails.  Petitioner's cannot show deficient

15 performance by plea counsel in relation to alleged pre-indictment delay, nor can he show that he

16 suffered prejudice from the alleged error.

17        In *United States v. Marion*, the United States Supreme Court held that a lengthy

18 pre-indictment delay does not violate the Speedy Trial Clause of the Sixth Amendment.  404

19 U.S. 307 (1971).  This is because only "a formal indictment or information or else the actual

20 restraints imposed by arrest and holding to answer a criminal charge... engage the particular

21 protections of that provision."  *Id*. at 320.

22        The Supreme Court further noted that statutes of limitations provide the primary

23 guarantee against prosecutorial delay and the bringing of stale charges.  *Marion*, 404 U.S. at 322

24 (quoting *United States v. Ewell*, 383 U.S. 116, 122 (1966).)  Nevertheless, a statute of limitations

25 does not define the full scope of a defendant's right to have charges promptly brought.  Rather,

26 "the Due Process Clause has a limited role to play in protecting against oppressive delay."

1  *United States v. Lovasco*, 431 U.S. 783, 789 (1977).

2  In describing the limited role of the Due Process Clause with respect to pre-

3  indictment delay, the United States Supreme Court indicated that "proof of prejudice is generally

4  a necessary but not sufficient element of a due process claim." *Lovasco*, 431 U.S. at 790. A

5  "due process inquiry must consider the reasons for the delay as well as the prejudice to the

6  accused." *Id.*

7  "[T]he Due Process Clause does not permit courts to abort criminal prosecutions

8  simply because they disagree with a prosecutor's judgment as to when to seek an indictment."

9  *Lovasco*, 431 U.S. at 790. Likewise, "[j]udges are not free, in defining "due process," to impose

10  on law enforcement officials our "personal and private notions" of fairness and to "disregard the

11  limits that bind judges in their judicial function." *Id.* (quoting *Rochin v. California*, 342 U.S.

12  165, 170 (1952)). Rather, the Supreme Court has explained

13      Our task is more circumscribed. We are to determine only whether
14  the action complained of... violates those "fundamental
    conceptions of justice which lie at the base of our civil and
    political institutions," Mooney v. Holohan, 294 U.S. 103, 112, 55
15      S.Ct. 340, 342, 79 L.Ed. 791 (1935), and which define "the
    community's sense of fair play and decency," Rochin v. California,
16      supra, 342 U.S. at 173, 72 S.Ct. at 210.

17  *Lovasco*, 431 U.S. at 790.

18  In *Lovasco*, the Supreme Court thoroughly examined the policy reasons for not

19  requiring, as a constitutional mandate, that a prosecutor bring charges as soon as probable cause

20  has been established. The *Lovasco* Court further rejected the argument that the government is

21  constitutionally required to file prompt charges once it has assembled sufficient evidence to

22  prove guilt beyond a reasonable doubt. *Id.* at 791-92. Several reasons were identified by the

23  Court for allowing considerable latitude in the timing of commencement of prosecution:

24      First, compelling a prosecutor to file public charges as soon as the
    requisite proof has been developed against one participant on one
25      charge would cause numerous problems in those cases in which a
    criminal transaction involves more than one person or more than
26      one illegal act. In some instances, an immediate arrest or

indictment would impair the prosecutor's ability to continue his
investigation, thereby preventing society from bringing
lawbreakers to justice.  In other cases, the prosecutor would be able
to obtain additional indictments despite an early prosecution, but
the necessary result would be multiple trials involving a single set
of facts.  Such trials place needless burdens on defendants, law
enforcement officials, and courts.

Second, insisting on immediate prosecution once sufficient
evidence is developed to obtain a conviction would pressure
prosecutors into resolving doubtful cases in favor of early and
possibly unwarranted prosecutions.  The determination of when the
evidence available to the prosecution is sufficient to obtain a
conviction is seldom clear-cut, and reasonable persons often will
reach conflicting conclusions... Even if a prosecutor concluded that
the case was weak and further investigation appropriate, he would
have no assurance that a reviewing court would agree.  To avoid
the risk that a subsequent indictment would be dismissed for
preindictment delay, the prosecutor might feel constrained to file
premature charges, with all the disadvantages that would entail.

Finally, requiring the Government to make charging decisions
immediately upon assembling evidence sufficient to establish guilt
would preclude the Government from giving full consideration to
the desirability of not prosecuting in particular cases.  The decision
to file criminal charges, with the awesome consequences it entails,
requires consideration of a wide range of factors in addition to the
strength of the Government's case, in order to determine whether
prosecution would be in the public interest.  Prosecutors often need
more information than proof of a suspect's guilt, therefore, before
deciding whether to seek an indictment... Requiring prosecution
once the evidence of guilt is clear [ ] could prevent a prosecutor
from awaiting the information necessary for such a decision.

*Lovasco*, 431 U.S. at 793-95.  Based on these reasons, the Supreme Court concluded:

We would be most reluctant to adopt a rule which would have
these consequences absent a clear constitutional command to do
so.  We can find no such command in the Due Process Clause of
the Fifth Amendment.  In our view, investigative delay is
fundamentally unlike delay undertaken by the Government solely
"to gain tactical advantage over the accused," United States v.
Marion, 404 U.S., at 324, 92 S.Ct., at 465, precisely because
investigative delay is not so one-sided.  Rather than deviating from
elementary standards of "fair play and decency," a prosecutor
abides by them if he refuses to seek indictments until he is
completely satisfied that he should prosecute and will be able
promptly to establish guilt beyond a reasonable doubt.  Penalizing
prosecutors who defer action for these reasons would subordinate
the goal of "orderly expedition" to that of "mere speed," Smith v.
United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041

1    (1959).  This the Due Process Clause does not require.

2  *Lovasco*, 431 U.S. at 795-96.

3    Thus, in *Lovasco*, the Supreme Court held that "to prosecute a defendant

4  following investigative delay does not deprive him of due process, even if his defense might have

5  been somewhat prejudiced by the lapse of time."  431 U.S. at 796.  Under this standard, it is not

6  enough to show that the prosecution could have proceeded more rapidly or that there was some

7  period of delay in which no additional investigation was taking place.  *See United States v.*

8  *Walker*, 601 F.2d 1051, 1056 (9th Cir. 1979).  The prosecution may not, however, intentionally

9  delay in commencing prosecution for the purpose of obtaining a tactical advantage, to the

10  prejudice of the accused."  *Id*.  "Also, it may not delay prosecution 'in reckless disregard of

11  circumstances known to the prosecution, suggesting that there existed an appreciable risk that

12  delay would impair the ability to mount an effective defense.'"  *Id*. (citing *Lovasco*, 431 U.S. at

13  795, n.17.)  Thus, in general, "[p]re-indictment delay is permissible unless it violates

14  'fundamental conceptions of justice which lie at the base of our civil and political institutions'."

15  *Id*. (quoting *Arnold v. McCarthy*, 566 F.2d 1377 (9th Cir. 1978).

16    In this case, petitioner first raised the issue of pre-indictment delay in a motion to

17  dismiss during proceedings before the Sacramento County Superior Court, prior to entry of his

18  no contest plea.  The motion to dismiss was denied following oral argument on the pleadings.

19  (CT at 123-149; Reporter's Transcript (hereinafter "RT") (6/16/06) at 5-18.  The record of these

20  proceedings reveals that no delay offending the community's sense of fair play and decency

21  occurred in this case.

22    In February 2001, petitioner's 12 year old stepdaughter, S., who is not one of the

23  victims of the offenses of conviction in this case, disclosed to police that petitioner had engaged

24  in inappropriate conduct with her and also with C.U.  At that time, S. did not allege that any

25  touching had occurred, nor did she allege that any of the conduct underlying the offenses of

26  conviction had occurred.  Accordingly, the superior court judge denied petitioner's motion to

1  dismiss the indictment, finding no delay, because "the facts which are the basis for the seven

2  counts with which you are accused now were not learned until 2005..."  (RT (6/16/06) at 16.)

3           Indeed, it appears from the record that no law enforcement agency was made

4  aware of the conduct underlying the offenses of conviction until 2005, when further investigation

5  was initiated after C.U.'s mother contacted Washington State police.  Petitioner proffers no

6  evidence that either the prosecution or law enforcement intentionally delayed in commencing

7  prosecution for the purpose of prejudice to the defense, or in spite of a known risk of prejudice to

8  the defense.  Even if petitioner experienced some pre-indictment delay, therefore, it did not

9  violate fundamental conceptions of justice.  *See Lovasco*, 431 U.S. at 796 ("to prosecute a

10  defendant following investigative delay does not deprive him of due process, even if his defense

11  might have been somewhat prejudiced by the lapse of time").

12           Because petitioner's underlying claim of pre-indictment delay is without merit, it

13  necessarily follows that plea counsel did not perform deficiently in failing to preserve this issue

14  for appeal.  Moreover, no prejudice could have resulted from the alleged inaccurate advice that

15  the issue could be raised on appeal following petitioner's no-contest plea.  Accordingly,

16  petitioner is not entitled to relief for any of his allegations regarding pre-indictment delay,

17  including those his plea was involuntary because of plea counsel's advice or performance in this

18  regard.

19                              VI.  CONCLUSION

20           For the foregoing reasons, the petition for writ of habeas corpus is hereby

21  DENIED.

22  IT IS SO ORDERED.

23  DATED: February 4, 2011

24  _Charlene H. Sorrentino_
    CHARLENE H. SORRENTINO
25  UNITED STATES MAGISTRATE JUDGE

26

14